IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **FRED ROUSE,** | ) |
| **Plaintiff,** | ) |
| v. | ) CIVIL ACTION NO. 5:10-CV-224 (MTT) |
| **MICHAEL B. DONLEY, SECRETARY, DEPARTMENT OF THE AIR FORCE,** | ) |
| **Defendant.** | ) |

### ORDER

This matter is before the Court on Defendant Michael Donley's Motion for Summary Judgment. (Doc. 13). For the reasons set forth below, the Motion is granted.

### I.   PROCEDURAL BACKGROUND

Plaintiff Fred Rouse filed his complaint on June 8, 2010, alleging that he was discriminated against based on his race and age.[1] (Doc. 1). According to Rouse, the Defendant's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA"). The Defendant seeks summary judgment on all claims.

---

[1] The Plaintiff made a deliberate choice not to address in his response his claims that he was denied a promotion due to his race and age. (*See* Doc. 18 at 3, stating that "Plaintiff will not address the discrimination issues pertaining to the promotion to overhaul supervisor"). It is well settled that claims not raised in opposition to a defendant's motion for summary judgment are deemed abandoned. *See Road Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994). Accordingly, the Plaintiff's failure to promote claims are abandoned and will not be considered by the Court in ruling on the Defendant's Motion.

## II.     FACTUAL BACKGROUND

Plaintiff Fred Rouse is a 62-year old African-American male.  Rouse has been employed at Warner Robins Air Force Base in Warner Robins, Georgia, since March 2004.  In 2008, Rouse was an aircraft electrician in the Warner Robins Air Logistic Center.  In January 2008, Rouse and Jay Powell, a 44-year old Caucasian male, attended an Electro-Environmental course on TDY (temporary duty) status at McChord Air Force Base in Tacoma, Washington that was scheduled to last from January 21, 2008 until March 5, 2008.  During the TDY, Rouse and Powell were informed that the course could potentially end a week earlier than scheduled due to the deletion of certain course items by the instructors.

As expected, the TDY concluded a week early on Thursday, February 28, 2008.  That day, Powell contacted Robert Turner, who was the Human Resources Supervisor for Rouse and Powell, and told Turner that the course ended early.  (Turner Aff. ¶ 4).  Powell asked Turner whether he should stay in Tacoma, per his initial orders and travel itinerary, or return to Warner Robins.  Turner told Powell that he and Rouse should return to Warner Robins, and to contact Audry Walton in the travel office for assistance in changing their travel plans.  (Turner Aff. ¶ 4).  According to Turner, Powell also asked if he could take annual leave to be with his family for the time that he was originally scheduled to be in Tacoma.  Turner granted Powell's request and Powell was charged annual leave for the days he requested.[2]

---

[2] Powell also confirmed in his affidavit that he took annual leave for March 3-5.  (Doc. 13-5).  During his deposition, however, Powell did not recall taking annual leave for the days that he was originally scheduled to be on TDY.

Rouse, on the other hand, chose not to return to Warner Robins after the course ended. Rouse offers several reasons for his decision to remain at the TDY location in Tacoma. In his affidavit, Rouse claims that because he did not receive notice that his orders or travel itinerary had changed, he thought it was okay to stay in Tacoma and return on his originally-scheduled flight on March 5. (Doc. 13-16 at 7). Rouse claims that he had previously been told that he could not fly on weekends because that would constitute overtime. (Doc. 13-16 at 7). Also, when he worked for a different organization, Rouse was told that he could not leave early from a TDY or he would have to pay to change the airline ticket. (Doc. 13-16 at 7).

Another reason Rouse did not return after the TDY ended is because he was scheduled to interview for the position of aircraft overhaul supervisor on February 29, 2008, and he did not want to risk losing the interview.[3] Interviews for all candidates were conducted on February 29, 2008. Like the other applicants for the position, Rouse was interviewed on February 29. However, because Rouse was in Tacoma, his interview took place over the telephone. During the interview, which took place after the TDY had ended, Al Haines, one member of the three-person interview panel, asked Rouse when he would be graduating and returning to Warner Robins. Rouse replied that he would be returning on March 5, 2008. He did not inform Haines that the course had ended earlier than scheduled or that Powell was returning to Warner Robins on February 29. (Doc. 13-13).

---

[3] This position was the basis of Rouse's now-abandoned failure to promote claims.

Finally, Rouse claims that he informed his supervisor, Mark Terrell, that the TDY ended early and that Terrell told Rouse to exercise his discretion in deciding whether to remain in Tacoma or return to Warner Robins. (Doc. 18 at 7). Rouse claims that he tried to contact Audry Walton in the travel office but she was unavailable, so he left her a message about changing his itinerary.[4] Based upon all these considerations, Rouse "figured that … he could remain in Tacoma for those days because he would have originally been there." (Doc. 18 at 8).

On April 17, 2008, Rouse was notified by Edward Montano, Rouse's Director at the time, that disciplinary action was being considered against him based on the events surrounding the TDY. (Doc. 13-12). On May 9, Montano notified Rouse of a proposed suspension from duty without pay for five days based on two separate charges. The charges, as set forth in the Notice of Proposed Suspension, were as follows:

> Charge [1]: Failure to comply with Air Force Instruction regarding TDY Orders
>
> Specifications: You were scheduled to be TDY at McChord AFB, Washington from 21 January 2008 through 5 March 2008. At the beginning of the course, you were informed by the ELEN class instructor, Mr. Paul Bauman, that the course would be ending early. You graduated on 28 February 2008. You failed to change your departure date. You did not depart Washington until 5 March 2008. This is in violation of Air Force Instruction 36-2110. paragraph 4.12.[5]
>
> Charge [2]: Lack of Candor

---

[4] The Plaintiff offers no testimony from either Terrell or Walton.

[5] AFI 36-2110. paragraph 4.12 states, in relevant part: "For TDY to training courses, members are normally directed not to arrive more than 1 day prior to the class start date. When the course ends, the member departs as directed in orders or as determined by the school commander." (Doc. 19-8 at 2).

> Specifications: At the end of a teleconference interview on 29 February 2008, Mr. Al Haines, Resource Flight Chief, asked you when you would be graduating and returning from your TDY. In reply, you told Mr. Haines that you would be returning on 5 March 2008. You did not tell Mr. Haines that you had already graduated on 28 February 2008. Also, you did not tell Mr. Haines that the other employee who went TDY with you was returning on 29 February 2008.

(Doc. 13-13).

In response to the Notice of Proposed Suspension, Rouse's union representative, Charles Howard, submitted a letter disputing the charges levied against Rouse. (Doc. 19-4). With regard to Charge 1, Rouse simply quarreled with Montano's conclusion that Rouse's conduct amounted to a violation of AFI 36-2110. paragraph 4.12. With regard to Charge 2, Rouse claimed that he did not tell Haines that the course ended early "because Haines did not ask him and if [Haines] wanted to know about any other employees; he should have called them just like he called [Rouse]." (Doc. 19-4 at 2). Rouse then accused Montano of lack of candor. (Doc. 19-4 at 2).

On June 23, 2008, Rouse was notified that he would be suspended from duty without pay for five days based on the charges set forth in the Notice of Proposed Suspension. (Doc. 13-14). Rouse served his suspension from July 15, 2008 until July 19, 2008. Rouse alleges in his complaint that his suspension was the result of discrimination based on his race and age.

### III.   DISCUSSION

**A.  Summary Judgment Standard**

Summary judgment must be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to

any material facts and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A factual dispute is genuine only if 'a reasonable jury could return a verdict for the nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)).  The burden rests with the moving party to prove that no genuine issue of material fact exists.  *Info. Sys. & Networks Corp*, 281 F.3d at 1224.  The district court must "view all evidence in the light most favorable to the nonmoving party, and resolve all reasonable doubts about the facts in its favor."  *Id.*

## B. Causes of Action

### 1. *McDonnell Douglas* Framework

Rouse has no direct evidence of race or age discrimination.[6]  Rather, like most victims of alleged job discrimination, he relies on circumstantial evidence, and the framework for analyzing circumstantial evidence first applied in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to make his case.  Under the *McDonnell Douglas* test, a plaintiff must first establish a prima facie case of discrimination.  If a plaintiff establishes a prima facie case of discrimination, the burden of production, but not the burden of persuasion, shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action.  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981).

---

[6] Direct evidence consists of only "the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Schoenfeld v. Babbit*, 168 F.3d 1257, 1266 (11th Cir. 1999) (internal quotations and citation omitted).

The burden then returns to the plaintiff to prove that the employer's reasons are a pretext for discrimination. *Id.* at 253. The employee can meet this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer *or* indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 256; *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (emphasis added).[7] If the proffered reason is one that might have motivated a reasonable employer, the employee "must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir. 2000). If a defendant

---

[7] There is some confusion regarding a plaintiff's burden to prove pretext. Citing *St. Mary's Honor Center v. Hicks,* 509 U.S. 502 (1993), some cases suggest that a plaintiff responding to an employer's motion for summary judgment must prove that the employer's legitimate, nondiscriminatory reason is false *and* that discrimination was the real reason for the employer's action. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 587 (6th Cir. 2009); *Maxfield v. Cintas Corp. No. 2,* 427 F.3d 544, 550-51 (8th Cir. 2005). However, the Supreme Court in *St. Mary's* did not address a plaintiff's burden at the summary judgment stage. Rather, the Court addressed whether an employee is entitled to judgment as a matter of law when the factfinder has concluded that the employer's nondiscriminatory reason is false, but nevertheless found that the employer did not intentionally discriminate against the plaintiff. Moreover, as noted by Judge Wilson in his concurring opinion in *Convoy v. Abraham Chevrolet-Tampa, Inc.,* 375 F.3d 1228, 1236 (11th Cir. 2004), the Supreme Court in *St. Mary's* "flatly rejected the so-called 'pretext-plus' approach to discrimination analysis, which had required the plaintiff not only to demonstrate that the employer's asserted reasons were pretextual, but also to introduce additional evidence of discrimination." In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 (2000), the Supreme Court disposed of any lingering viability of pretext-plus analysis. While it is true the plaintiff must ultimately prove intentional discrimination, "it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Id.* at 147 (emphasis in original). In a concurring opinion, Justice Ginsburg, in a summary of the majority's holding, wrote that a plaintiff "*may* survive judgment as a matter of law by submitting two categories of evidence: first, evidence establishing a 'prima facie case,' …; and second, evidence from which a rational factfinder could conclude that the employer's proffered explanation for its actions was false." *Id.* at 154 (emphasis in original); *see also Dulin v. Bd. of Comm'rs of Greenwood Leflore Hosp.*, 657 F.3d 251 (5th Cir. 2011). Clearly, at the summary judgment stage, the plaintiff, in rebutting the employer's proffered legitimate, nondiscriminatory reason, does not shoulder the burden of producing evidence both of falsity and that the real reason was discrimination. Indeed, the *McDonnell Douglas* test is all about proving intentional discrimination by circumstantial evidence; if the employee had direct evidence that the real reason for the adverse employment action was discrimination, the employee would have no need to resort to the *McDonnell Douglas* test.

articulates more than one legitimate, nondiscriminatory reason, the plaintiff must rebut each of the reasons to survive summary judgment. *Id.* at 1037. Thus, "[a] plaintiff withstands summary adjudication by producing sufficient evidence to allow a reasonable finder of fact to conclude that the defendant's articulated reasons for its decision are not believable." *Howard v. B.P. Oil Co., Inc.*, 32 F.3d 520, 526 (11th Cir. 1994).

### 2. Title VII Claim

Generally, Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case of disparate treatment under Title VII, Rouse must show that (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than a similarly situated individual who is not a member of his protected class. *McCann v. Tillman*, 526 F.3d 1370, 1373 (11th Cir. 2008). The Defendant concedes that Rouse can satisfy elements one, two, and three of his prima facie case: he is a member of a protected class, he was qualified for his position, and he suffered an adverse employment action. Thus, only the fourth element remains in dispute.

The final element of Rouse's prima facie case requires him to demonstrate that he was treated less favorably than a similarly situated employee who is not a member of his protected class. It is not enough to simply show that he "belongs to a protected class and that [he] did not violate [his] employer's work rule." *Jones v. Bessemer Carraway Med. Ctr.*, 137 F.3d 1306, 1311 n.6 (11th Cir. 1998), *superseded in part by*

151 F.3d 1321 (11th Cir. 1998). Instead, Rouse must identify an employee outside his protected class to whom he is "similarly situated in all relevant respects." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997). "[T]o determine whether employees are similarly situated, we evaluate whether the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999). "[T]he quantity and quality of the comparator's misconduct [must] be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." *Id*. In making this determination, courts must be mindful that "Title VII does not take away an employer's right to interpret its rules as it chooses, and to make determinations as it sees fit under those rules." *Id*. at 1369 (internal quotations and citation omitted).

Rouse has identified white male Jay Powell as the similarly situated employee who was treated more favorably. Rouse alleges that he and Powell are similarly situated in "most respects," but that Powell was not suspended. (Doc. 18 at 9). In support of his contention that Powell is a suitable comparator, Rouse alleges that he and Powell "were detailed together for an out-of-state course; both perform electrical work in their job duties; both encountered the same situation of a course ending early on the same date; and both contacted their supervisors but received entirely different directions as to what should be done. Powell was directed … to return early and allowed to use leave. Rouse complied with his supervisor's directions and strictly followed the orders stated for [his] Washington TDY." (Doc. 18 at 10).

The Court finds that Powell is not a proper comparator. Rouse has failed to show that he and Powell were involved in or accused of the same or similar conduct

and were disciplined in different ways.  At the conclusion of the TDY, Powell immediately contacted his HR Supervisor, Turner, and sought guidance regarding whether he should return to Warner Robins or remain in Tacoma.  Powell asked Turner if he could use annual leave time for the following week to spend time with his family, and he was allowed to do so.  Powell returned to Warner Robins on February 29, was on leave the following week, and returned to work thereafter.

Rouse, on the other hand, did not contact Turner, but instead remained in Tacoma, collecting a per diem for at least five days after the TDY ended on February 28.  Moreover, when Rouse spoke to Haines on February 29, he failed to tell him that the TDY had ended early or that Powell was returning to Warner Robins on February 29.  Based on this conduct, Rouse was charged with two separate violations: failure to return to Warner Robins after the TDY concluded and lack of candor for failing to inform Haines that the TDY ended early.  Not only was Powell not accused of similar misconduct, Powell was not accused of any misconduct at all.  Powell returned to Warner Robins once the TDY ended; he never misrepresented, intentionally or not, that the TDY was ongoing; and he did not collect per diem payments for periods after the TDY ended.  Thus, under no interpretation of the facts could Rouse and Powell be accused of committing the same or similar infractions.  Accordingly, Rouse has failed to identify a comparator or to direct the Court to any other circumstantial evidence that race-based discrimination played a role in his suspension.  The Defendant is therefore entitled to summary judgment.  *Holifield*, 115 F.3d at 1562 (holding that summary judgment is appropriate if the plaintiff fails to identify a similarly situated employee and no other evidence of discrimination is present).

Even assuming that Rouse proved a prima facie case, he has failed to prove that the Defendant's proffered reason for his suspension --- failure to return to Warner Robins after the TDY and failure to inform Haines that the TDY ended early --- was pretextual.  Rouse spends much of his response arguing that his actions surrounding the TDY were reasonable and did not amount to violations of the rules his employer found him to have violated.  (*See* Doc. 18 at 12-16).  Rouse also makes much of the fact that Powell was allowed to take annual leave for the days he was originally scheduled to be in Tacoma.  Rouse claims that he too should have been allowed to use leave time for those days.  This argument is without merit.

First, unlike Powell, Rouse admits that he never asked to be allowed to take leave for the days he remained in Tacoma.  (Rouse Dep. at 28, 31).  Second, even assuming that Rouse's actions and decision to remain in Tacoma were "reasonable," as he argues, and that he should have been allowed to use annual leave time for the days missed, he cannot succeed in showing the Defendant's reason for suspending him was pretextual by "simply quarreling with the wisdom of that reason." *Chapman*, 229 F.3d at 1030.  "[F]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions." *Id.* (internal quotations and citation omitted).  The Defendant has given an explanation for its decision to suspend Rouse.  Although Rouse may disagree with the Defendant's stated reason for suspending him, he has not put forth sufficient evidence to show that the Defendant's explanation is unworthy of credence.  Accordingly, having failed to establish that the Defendant's legitimate, nondiscriminatory reason was pretext, the Defendant is entitled to summary judgment on Rouse's Title VII disparate treatment claim.

### 3. ADEA Claim

Rouse also brings a claim under the ADEA, claiming that he was suspended because of his age. The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). The *McDonnell Douglas* framework also applies to Rouse's ADEA claim. However, in applying the *McDonnell Douglas* test in age discrimination cases, courts must take into account the Supreme Court's decision in *Gross v. FBL Fin. Servs., Inc.,* 557 U.S. 167, 129 S. Ct. 2343 (2009). In *Gross,* the Supreme Court held that the ADEA does not authorize "mixed motive" age discrimination cases. While mixed motive cases are permissible under Title VII, a plaintiff alleging age discrimination "must prove that age was the 'but-for' cause of the employer's adverse decision."[8] 129 S. Ct. at 2350. The Supreme Court also observed in *Gross* that "the Court ha[d] not definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* … utilized in Title VII cases is appropriate in the ADEA context." *Id*. at 2349 n.2. However, the Eleventh Circuit, and every other circuit addressing the issue, has continued to apply the *McDonnell Douglas* test in ADEA cases.

Similar to his Title VII claim, Rouse must establish a prima facie case of disparate treatment under the ADEA by showing that (1) he is a member of a protected age group; (2) he was qualified for his position; (3) he suffered an adverse employment

---

[8] Senators Tom Harkin (D-IA), Chuck Grassley (R-IA), and Patrick Leahy (D-VT) have introduced legislation that would effectively overturn the Supreme Court's decision in *Gross*. The Protecting Older Workers Against Discrimination Act ("POWADA"), if passed, would standardize the burdens of production and proof for all employment discrimination claims. S. 2189, 112th Cong. (2012).

action; and (4) he was treated less favorably than a similarly situated employee outside his protected age group. *Horn v. United Parcel Servs., Inc.*, 433 Fed. Appx. 788, 792 (11th Cir. 2011).

Because the legal analysis is the same for both a Title VII and ADEA claim, the Eleventh Circuit has instructed that district courts need not analyze each claim separately. *Cofield v. Goldkist, Inc.*, 267 F.3d 1264, 1267 n.6 (11th Cir. 2001). Accordingly, for the reasons set forth above in the Court's "Title VII Claim" discussion, Rouse has failed to identify a proper comparator and he has failed to show that the Defendant's legitimate, nondiscriminatory reason for suspending him was pretextual. The Defendant is therefore entitled to summary judgment on Rouse's ADEA claim.

### IV. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment is **granted**.

**SO ORDERED,** this 9th day of April, 2012.

> S/ Marc T. Treadwell
> MARC T. TREADWELL, JUDGE
> UNITED STATES DISTRICT COURT